UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. 07 Cr 2915 JM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| QING LI, | ) | Memorandum of Law in Reply and |
| | ) | Further Support of Defendant's |
| | ) | Motion to Dismiss and to Suppress |
| Defendant. | ) | |
| | ) | |

Defendant Qing Li submits the following Memorandum of Law in Reply and Further Support of her motions to Dismiss and to Suppress and says:

I.  **The Statute is Void for Vagueness as to this Defendant**

Defendant has submitted that the statute upon which she has been indicted is void for vagueness as applied to her. The case law and argument set forth by the Government in response is not to the contrary.

The Government asserts that Ms. Li was fully aware that her conduct was illegal when the undercover had sent her emails stating that the items were export controlled, that they could be seized by customs and that a license was needed for export. To prove this, the Government has set forth in their statement of facts some of the emails which were sent between Ms. Li, Endevco and the storefront. It is important to note that after Ms. Li was told that the item was export controlled, she had no further contact with anyone to secure the products until she received an email approximately 2 weeks later from Endevco. In this email (prompted by the Government)

Endevco, a reputable company, stated that they had used the "storefront" she was referred to (the undercover operation) in the past and they had had success in their transactions. At a minimum, Ms. Li received mixed signals from Endevco and the undercover operation. It was not until August, on the eve of Ms. Li's arrest that the word "arrest" was ever used.

In all but one of the cases set forth by the Government, the defendants had specialized knowledge regarding exports, and export control. In <u>United States v. Swarovski</u>, 592 F.2d 131 (2nd Cir. 1979), the defendant controlled companies in both the United States and Canada, instructed an employee to get quotes on sophisticated photo equipment, and even sent a license application along with his purchase order. It was this state of facts which caused the Court to state that a vagueness challenge comes with "little grace from one who was fully cognizant of the wrongfulness of his acts."

In <u>United States v. Gregg</u>, 829 F.2d 1430 (8th Cir. 1987) the defendants were in the export business handling avionic devices.

In <u>United States v. Sun</u>, 278 F.3d 302 (4th Cir. 2002), the defendant were owners of a company that sold US Miilitary property.

In <u>United States v. Lee</u>, 183 F.3d 1029 (9th Cir. 1999), the defendants owned an export company, and the evidence demonstrated that they were explicitly aware that the items they sought to export were export controlled.

It is only in <u>United States v. Hsu</u>, in which the defendant was not in a business of export or military application. However, in that case, the Court was clear that the defendant had many specific, explicit and express conversations in which the defendant was told not only that a license was needed for export, that the item was on the munitions list, and that a license would

never be issued for export to China, but further, that export of the items was in violation of law. It was something much more than the idea that the penalty could be having the items seized by customs as Ms. Li had been led to believe by the undercover. Moreover, one of the questions before this Court is whether the statute and regulations would give this defendant fair notice that a Piezoresistive Accelerometer Model 7270-200K was in fact on the export control list. The <u>Hsu</u> Court specifically did not have the question of whether the device which was to be exported required an export license. ("The question of whether the AECA or its regulations suffice to provide a hypothetical defendant fair notice as to what encryption devices qualify as "military" and so require an export license, is not before us.")

Most importantly, the Government has completely disregarded the statute and regulations at issue in the instant matter, merely stating that Ms. Li should have simply asked the Directorate of Defense Trade Controls whether the item was on the export control list. Citing from <u>Lee</u>, the Government asserts that Ms. Li could have contacted the appropriate Government agency. However, the citation from <u>Lee</u> referred to a defendant who was in the munitions business and would be familiar with the various governmental agencies and which to contact. That reasoning does not apply to the defendant in this case.

Because this statute and the regulations promulgated thereunder were meant to deter businesses and their employees from exporting of items without a license, this statute is Unconstitutional as applied to this defendant.

II.   **The Customs Subpoena was invalid and unlawful, and such conduct by the Governmental requires suppression**

As set forth in the initial moving papers, Congress has determined that the information covered in the Stored Communications Act is information in which a person has privacy and

proprietary rights. The cases cited by the Government do not dispute this. In fact, the majority of the cases cited by the Government do not even concern the Stored Communications Act.

The Fourth Amendment protects privacy interests in which a person justifiably relies. Katz v. United States, 387 US 294,304(1967). When Congress expressly states that a person has a privacy interest in IP addresses, the defendant would submit that this is a privacy interest in which a person can justifiably rely upon. Further, IP addresses themselves are not the type of information which is shared with a third person, merely another computer. Unlike dialed telephone numbers, which have a history which includes actual disclosure to a third person (the old time operator), the nature of computers and communication between them never required the intervention of a third person in order to access various websites.

The Government relies heavily on the case of United States V. Smith, 155 F.3d 1051 (9th Cir. 1998). In Smith, the question presented to the Court was whether a voicemail message, initially intercepted by a private party, was subject to suppression pursuant to the Wiretap Act. As this Court is aware, interceptions, even by private parties, are subject to suppression under the Wiretap Act, whereas interceptions by civilians are not covered by the Stored Communications Act. This question, while close to the one presented to this Court, is not similar enough to be relevant to the issues presented herein.

United States v. Forrester, ___F.3d___, 2008 US App. LEXIS 202 at *19 (9th Cir. 2008) is a case which does not mention or refer to the Stored Communications Act in any way. This is a case about the pen register statute, and information gained therefrom. The court's analysis regarding whether IP addresses entail a privacy interest are less compelling when it is noted that the Stored Communications Act itself, and the congressional intent behind it were not discussed

at all.

In <u>United States v. Ferguson</u>, 508 F.Supp. 2d 7 (DDC 2007), suppression was found not to be an appropriate remedy when the information which had been retrieved from the Internet Service Providers was retrieved pursuant to a warrant issued by a neutral magistrate. In the section which deals with the suppression remedy, the case relies upon <u>Smith, supra,</u> without distinguishing the fact that the unlawful conduct in <u>Smith</u> was by a private actor.

Unlike the third party standing cases, the information gained through this unlawful subpoena was in violation of statute, and in violation of Congress's intent to create and enforce a personal privacy interest. Comparing the seizure of physical items from one person to be used against another, or the business records of a financial institution are inapposite when considered against Congress's intent in enacting and amending the Stored Communications Act. By creating a privacy interest, Congress has determined that a person can expect privacy in their communications and IP addresses, and therefore, failure to obtain a warrant or statutory authority violated Ms. Li's Constitutional rights.

Even though the statute itself provides for civil and criminal penalties for its violation, this does not preclude this Court from using the Exclusionary Rule to punish the Government agent's illegal conduct. The statutory provision (one being hotly contested in both the Legislative and Executive branches) is meant to protect the internet service providers, not illegal government action. If the purpose of the Exclusionary rule is to deter unlawful governmental conduct, a provision which punishes telecommunications companies would have no effect, and would leave government agents unfettered discretion to violate the statute at will. Even in these post September 11, 2001 times this type of unfettered discretion cannot be permitted or sanctioned by

the Courts. If there was a remote possibility that the Government was going to prosecute its agents for violation of law, then the Exclusionary Rule might not be necessary. However, this type of Government action is rather unlikely.

The Government further argues that Customs has unfettered discretion to "take appropriate action" and "investigate," violations of the Export control Act. This interpretation would certainly include issuing subpoenas, but might also include any act, legal or not, to enforce the law. This clearly cannot be the case. Furthermore, it is unlikely that such broad powers could be used to violate the Constitutional rights of the subjects of investigations. Assuming, arguendo, that the information sought through the subpoena is indeed private, and Constitutionally protected, a subpoena simply will not do. Even suspected terrorists have a right to have the FISA court rule on the probable cause supporting a warrant to seize their communications. Without the approval of a neutral magistrate, seizure of information covered by the Stored Communications Act must be suppressed.

WHEREFORE, Ms. Li respectfully requests that the Indictment be dismissed, the evidence suppressed, and for such other and further relief that this Court may deem just and proper.

Dated: New York, New York
      February 26, 2008

Goldberger & Dubin, P.C.

By: *Stacey Van Malden*
Stacey Van Malden, Esq.
Attorneys for Defendant Li
401 Broadway Ste 306
New York, NY 10013
212-431-9380