# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br>vs.<br><br>QING LI,<br><br>                  Defendant. | CASE NO. 07 CR 2915 JM<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT AND MOTIONS TO SUPPRESS EVIDENCE (DOC. NO. 21)** |

The United States has charged Defendant Qing Li with conspiracy to export defense articles without a license in violation of 22 U.S.C. § 2778 (the Arms Export Control Act, or "AECA") and to smuggle goods from the United States in violation of 18 U.S.C. § 554. Defendant moves to dismiss the indictment on the ground that the AECA is unconstitutionally vague as applied to Defendant. Defendant also moves to suppress evidence seized pursuant to allegedly unauthorized "customs enforcement subpoenas," and other evidence obtained as a derivative result of those allegedly unlawful subpoenas. For the reasons set forth below, the court hereby **DENIES** both motions.

## I. BACKGROUND

On October 18, 2007, Defendant was charged by grand jury indictment with one count of conspiracy under 18 U.S.C. § 371. The indictment alleged that Defendant, a citizen of the People's Republic of China, conspired to export defense articles without a license, in violation of 22 U.S.C. § 2778, and to smuggle goods from the United States, in violation of 18 U.S.C. § 554. The defense

articles were identified as Endevco 7270A-200K accelerometers.

## II. DISCUSSION

### A. Motion to Dismiss Indictment for Vagueness

The AECA criminalizes the willful exportation of defense articles without a license. 22 U.S.C. §§ 2278(b)(2), (c); United States v. Lee, 183 F.3d 1029, 1032-33 (9th Cir. 1999). In the AECA context, a willful violation occurs where a defendant knows his or her conduct violates the law. United States v. Hsu, 364 F.3d 192, 197 (4th Cir. 2004) (AECA requires specific intent). At issue here is Category XII of the Munitions List, set forth in the AECA's implementing regulations at 22 C.F.R. § 121.1. This category includes, inter alia, "astro-compasses and star trackers and military accelerometers and gyros . . . ." 22 C.F.R. § 121.1.

Defendant argues that the court should dismiss the indictment because the AECA and its implementing regulations are unconstitutionally vague as applied to her. Specifically, Defendant argues that a person of ordinary intelligence could not determine that the Endevco accelerometer device is a "military accelerometer" requiring an export license. In support of this argument, she attaches to her motion two pages of manufacturer-provided "public information" regarding the Endevco accelerometer. She argues that "[a] person of ordinary intelligence would likely deem that data sheet incomprehensible," and that the sheet does not indicate whether the device is for military or weapons use. (Mot. at 3.) She also emphasizes the allegation that even prosecutors must request information from the State Department to determine if an item is on the list.

#### 1. Legal Standards

"Unless the law is impermissibly vague in all applications," a defendant challenging a law on vagueness grounds can argue only that the law is vague as applied to that defendant. Lee, 183 F.3d at 1031 (citing United States v. Iverson, 162 F.3d 1015, 1021 (9th Cir. 1998)); see also United States v. Kim, 449 F.3d 933, 942 (9th Cir. 2006) ("vagueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant") (citations omitted). A criminal statute is unconstitutionally vague, in violation of due process, "if a reasonable person of ordinary intelligence would [not] understand what conduct the statute prohibits." Lee, 183 F.3d at 1032 (citing Iverson, 162 F.3d at 1021). Furthermore, a regulation is unconstitutionally vague if it is not "capable

of a limited interpretation such that '(1) ordinary people could understand what conduct is prohibited, and (2) those enforcing the law are provided with clear standards to constrain them.'" Lee, 183 F.3d at 1032 (citing United States v. Erickson, 75 F.3d 470, 475 (9th Cir. 1996)). Courts apply a less-strict vagueness test to a criminal statute regulating economic activity. United States v. Sun, 278 F.3d 302, 309 (4th Cir. 2002). Additionally, the inclusion of a mens rea requirement in a statute "significantly reduces any concern that the statute and regulation fail to provide proper notice." Lee, 183 F.3d at 1033; see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982) ("scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed").

### 2. Analysis

Defendant attempts to distinguish numerous cases in which circuit courts have rejected as-applied vagueness challenges to the AECA. See, e.g., Lee, 183 F.3d 1029; United States v. Helmy, 951 F.2d 988 (9th Cir. 1992); Hsu, 364 F.3d 192; Sun, 278 F.3d 302; United States v. Swarovski, 592 F.2d 131 (2d Cir. 1979). She claims that these cases differ from hers because the defendants possessed specialized knowledge regarding the products they sought to export, whereas in her case the government cannot present evidence that she knew the device was a prohibited article. The court notes that not only does Defendant fail to cite a single case in which the court found the AECA unconstitutionally vague, her argument emphasizes the premature and misdirected nature of her challenge. Because the charging statute contains a scienter requirement (willful violation), innocent, accidental, or unknowing exportation of a proscribed device cannot support a conviction. Therefore, the relevant inquiry consists not of an abstract analysis of constitutional vagueness, but what Defendant knew. Such an inquiry will be undertaken by a jury and based on the evidence adduced at trial. See Lee, 183 F.3d at 1032-33. Here, the factual record has yet to be developed. Until an evidentiary record is created, the court cannot determine whether Defendant "in fact had fair notice that the statute and regulations proscribed [her] conduct." Hsu, 364 F.3d at 196. Application of these cited controlling authorities, in essence, renders Defendant's constitutional challenge moot at this

juncture.[1]

The court therefore **DENIES** Defendant's motion to dismiss the indictment for vagueness.

**B.      Motions to Suppress**

Defendant argues that the evidence seized pursuant to customs subpoenas should be suppressed because the subpoenas were unauthorized and unlawful. The evidence at issue consists of Internet Protocol ("IP") log-in histories and addresses subpoenaed by Immigration and Customs Enforcement ("ICE") agents regarding the MSN/Hotmail account used by Defendant and an alleged co-conspirator to communicate with the undercover agent. According to the government, MSN/Hotmail provided subscriber information and log-in histories – including the date and time of and IP address used for each log-in – for the chinaman326 account. The government argues that the customs subpoenas were valid and, even if the subpoenas were invalid, suppression is unavailable as a remedy.

Defendant also argues that other evidence derived from the administrative subpoenas – including evidence collected through the use of a pen register/trap and trace, search warrant, or order for electronic interception – should be suppressed as fruit of the poisonous tree.

**1.      The Subpoenas Were Authorized**

Defendant claims that the subpoenas were unauthorized by the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2702-2712. She points to § 2703(c), which provides that "[a] provider of electronic communication service or remote computing service shall disclose to a governmental entity" information regarding a service subscriber or customer, including the individual's subscriber number or identity, "when the governmental entity uses an administrative subpoena authorized by a Federal or State statute . . . ." 18 U.S.C. § 2703(c)(2). Defendant then analyzes a series of statutes and regulations in arguing that federal law does not authorize ICE or the Department of Homeland Security to issue this type of administrative subpoena in a criminal case. (Mot. at 5.) The government

---

[1] In contrast, the as-applied vagueness analysis is more appropriately undertaken in cases like Helmy, 951 F.2d 988, in which the court addressed a vagueness challenge to a sentencing provision that established a base offense level of 22 for crimes involving "sophisticated weaponry." Id. at 990 (citing U.S. Sentencing Guidelines § 25M.2). The court rejected the argument that "sophisticated weaponry" was unconstitutionally vague as applied to MX-4926, the missile component illegally exported by the defendant. The court found that "missiles fall within any common sense definition of 'sophisticate weaponry'" and that the United States Munitions List adequately specified MX-4926 as a restricted substance. Helmy, 951 F.2d at 992-94.

1  relies on many of the same statutory provisions in arguing that statutory authority does exist.

2  Both parties cite 22 U.S.C. § 2778(e), pursuant to which the President may delegate to another
3  department the authority to enforce the AECA and investigate violations thereof. Both parties also
4  note that the President delegated this authority to the Department of State in Executive Order 11958.
5  Exec. Ord. No. 11958, Jan. 18, 1977, 42 F.R. 4311, included as amended in note following 22 U.S.C.
6  § 2751. The Department of State in turn authorized ICE to "take appropriate action to ensure
7  observance of this subchapter as to the export or attempted export of any defense article or technical
8  data . . . ." 22 C.F.R. 127.4. Defendant's analysis stops here, concluding that these provisions do not
9  authorize ICE to issue the administrative subpoenas.

10  In contrast, the government finds authority for administrative subpoenas within the AECA's
11  framework. The government argues that the President's authority under the AECA includes the power
12  to enforce the Act by making investigations and "by subpena [sic] requir[ing] any person to appear
13  and testify or to appear and produce books, records, and other writings, or both . . . ." 50 U.S.C. Appx.
14  § 2241(a)(1), incorporated in 22 U.S.C. § 2278(e) ("the President is authorized to exercise the same
15  powers concerning violations and enforcement which are conferred upon departments, agencies and
16  officials . . . by [50 U.S.C. Appx. § 2411(a)]"). Thus, according to the government, this subpoena
17  authority has been delegated to the Department of State and to ICE. The government also cites, as
18  further sources of ICE's authority to execute administrative subpoenas, 22 C.F.R. § 127.4 (ICE
19  officers "may take appropriate action to ensure observance of [the International Traffic in Arms
20  Regulations] as to the export or the attempted export of any defense article or technical data . . .") and
21  19 U.S.C. § 1589a (customs officer may "execute and serve any order, warrant, subpoena, summons,
22  or other process issued under the authority of the United States").

23  Having carefully considered the authorities presented by both parties, the court agrees with
24  the government and finds that the administrative subpoenas issued by ICE and used to obtain IP log-in
25  histories and addresses were authorized by the SCA, AECA, and federal regulations thereunder.

26  **2.    The Stored Communications Act Provides No Suppression Remedy**

27  The government further argues that, regardless of the validity of the subpoenas, the SCA
28  provides no suppression remedy.

In <u>United States v. Smith</u>, 155 F.3d 1051 (9th Cir. 1998), the Ninth Circuit concluded that, in light of the express remedies provided for by the SCA, <u>see</u> 18 U.S.C. §§ 2701 (criminal penalties), 2707 (civil damages), and the SCA's exclusivity of remedies provision, <u>see</u> <u>id.</u> § 2708, the SCA "expressly rules out exclusion as a remedy." <u>Smith</u>, 155 F.3d at 1056 ("If the voicemail message at issue is subject to the strictures of the Stored Communications Act, then suppression is not an available remedy."); <u>see also</u> <u>United States v. Ferguson</u>, 508 F. Supp. 2d 7, 10 (D.D.C. 2007) ("Even if Defendant was correct that the Government did not comply with the SCA, the statute does not provide for a suppression remedy.") (citations omitted); <u>Bansal v. Russ</u>, 513 F. Supp. 2d 264, 282 (E.D. Pa. 2007) (purpose of § 2708 is "to establish that the exclusionary rule is not a remedy provided for by the [SCA]"). Defendant seeks to distinguish <u>Smith</u> and <u>Ferguson</u> on the grounds that <u>Smith</u> concerned suppression pursuant to the Wiretap Act, and <u>Ferguson</u> involved a magistrate-issued warrant and somehow failed to distinguish <u>Smith</u> properly. (<u>See</u> Reply at 4-5.) The court finds these alleged distinctions unpersuasive and, based on the authorities discussed above, agrees with the government's contention that suppression is not available.

### 3.     **Defendant Had No Reasonable Expectation of Privacy**

The government also argues that Defendant had no reasonable expectation of privacy in her IP log-in histories and IP addressing information.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" <u>California v. Ciraolo</u>, 476 U.S. 207, 211 (1986) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 360 (1967) (Harland, J., concurring)). No privacy interest exists in "information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." <u>United States v. Miller</u>, 425 U.S. 435, 443 (1976) (citations omitted).

In <u>United States v. Forrester</u>, 512 F.3d 500 (9th Cir. 2008), the court addressed the defendant's argument that evidence obtained through computer surveillance – specifically, e-mail to/from addresses, IP addresses of websites he visited, and the total amount of information transmitted to or from his account – should have been excluded as a violation of his Fourth Amendment right to be free

from unlawful searches and seizures. The court held that the method of surveillance did not violate the defendant's Fourth Amendment right because the defendant had no legitimate expectation of privacy:

> We conclude that the surveillance techniques the government employed here are constitutionally indistinguishable from the use of a pen register that the Court approved in [Smith v. Maryland, 442 U.S. 735 (1979)]. First, e-mail and Internet users, like the telephone users in Smith, rely on third-party equipment in order to engage in communication. . . . Analogously, e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information. Like telephone numbers, which provide instructions to the "switching equipment that processed those numbers," e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers.

Forrester, 512 F.3d at 510 (quoting Smith v. Maryland, 442 U.S. at 744).

Defendant claims that Forrester's reasoning and holding do not apply here because Forrester addressed not the SCA but an alleged violation of the then-applicable pen register statute, 18 U.S.C. § 3121-27. Defendant argues that, by enacting the SCA, Congress intentionally created a protected privacy interest in electronic communications and IP addresses. In support of this claim, she cites Theofel v. Farey-Jones, 359 F.3d 1066 (9th Cir. 2004), in which the court stated, "The [SCA] protects individuals' privacy and proprietary interests. The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility." Id. at 1072-73. Defendant argues that this fact distinguishes conduct governed by the SCA from conduct governed by a pen register statute.[2]

The SCA does not support the distinction Defendant wishes to draw. As noted above, § 2703(c)(2) specifically states that, when a governmental entity presents an authorized administrative subpoena, an electronic communication service provider must disclose information including, most pertinently, "records of session times and durations," § 2703(c)(2)(C), and "subscriber number or identity, including any temporarily assigned network address," § 2703(c)(2)(E), of a subscriber or

---

[2] Defendant also claims that this case differs from the pen register cases due to a historical difference between telephones and the internet. She contends that the lack of an expectation of privacy in phone calls can be traced to the early days of telephone technology, when a live operator connected the caller to the recipient, whereas modern internet use has never involved a human intermediary. Forrester expressly precludes this argument.

customer. Thus, even if the SCA does create a privacy interest in some aspects of electronic communications, it clearly does not communicate to subscribers or customers that they have a reasonable expectation of privacy in their IP addresses and log-in histories. This interpretation is consistent with the holding in Forrester and reflects the important distinction between the privacy concerns implicated by disclosure of the contents of electronic communications and those implicated by disclosure of address and access data related to internet use. See Forrester, 512 F.3d at 509-11. Accordingly, the court concludes that Defendant had no reasonable expectation of privacy in her IP log-in histories and IP addressing information.[3]

### 4. Defendant Lacks Standing to Assert a Fourth Amendment Violation

Finally, the government claims that Defendant lacks standing to assert a Fourth Amendment violation because the government obtained the subpoenaed information from a third party.

Where a defendant's Fourth Amendment interests are not implicated, courts apply "the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued." Miller, 425 U.S. at 444 (citations omitted). In other words, if a defendant lacks a reasonable expectation of privacy in regard to evidence obtained from a third party, the defendant does not have standing to invoke the exclusionary rule. See United States v. Payner, 447 U.S. 727, 731-32 (1980) ("[A] court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights.") (citation omitted).

In light of the court's conclusion that Defendant lacks a reasonable expectation of privacy in the evidence seized pursuant to the administrative subpoenas in this case, the court also finds that Defendant does not have standing to seek suppression of the evidence.

---

[3] Contrary to Defendant's suggestion, even if Defendant's Fourth Amendment rights had been violated, suppression does not automatically follow. The Supreme Court has cautioned against an expansive application of the exclusionary rule, explaining: "[w]hether the exclusionary sanction is appropriately imposed in a particular case, . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct. . . . [W]e have never held that evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police." Hudson v. Michigan, 547 U.S. 586, 591 (2006) (internal quotations omitted). In holding that a violation of the "knock-and-announce" rule does not require suppression of evidence found in a subsequent search, the Hudson Court noted that civil liability acted as an effective deterrent to "knock-and-announce" violations. See id. at 598.

1  The court therefore **DENIES** Defendant's motion to suppress the IP log-in histories and
2 addresses obtained pursuant to administrative subpoenas.  Accordingly, the court also **DENIES**
3 Defendant's motion to suppress all allegedly derivative evidence, including evidence collected
4 through the use of a pen register/trap and trace, search warrant, or order for electronic interception.

**III.   CONCLUSION**

For the foregoing reasons, the court hereby **DENIES** Defendant's motion to dismiss the indictment for vagueness and motions to suppress.

**IT IS SO ORDERED.**

DATED:  March 20, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge