1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br>   vs.<br><br>QING LI,<br><br>                           Defendant. | CASE NO. 07 CR 2915 JM<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT AND MOTIONS TO SUPPRESS EVIDENCE (DOC. NO. 21)** |

     The United States has charged Defendant Qing Li with conspiracy to export defense articles without a license in violation of 22 U.S.C. § 2778 (the Arms Export Control Act, or "AECA") and to smuggle goods from the United States in violation of 18 U.S.C. § 554. Defendant moves to dismiss the indictment on the ground that the AECA is unconstitutionally vague as applied to Defendant. Defendant also moves to suppress evidence seized pursuant to allegedly unauthorized "customs enforcement subpoenas," and other evidence obtained as a derivative result of those allegedly unlawful subpoenas. For the reasons set forth below, the court hereby **DENIES** both motions.

## I.   BACKGROUND

     On October 18, 2007, Defendant was charged by grand jury indictment with one count of conspiracy under 18 U.S.C. § 371. The indictment alleged that Defendant, a citizen of the People's Republic of China, conspired to export defense articles without a license, in violation of 22 U.S.C. § 2778, and to smuggle goods from the United States, in violation of 18 U.S.C. § 554. The defense

1  articles were identified as Endevco 7270A-200K accelerometers.

2  **II.      DISCUSSION**

3        **A.      Motion to Dismiss Indictment for Vagueness**

4        The AECA criminalizes the willful exportation of defense articles without a license. 22 U.S.C.

5  §§ 2278(b)(2), (c); United States v. Lee, 183 F.3d 1029,1032-33 (9th Cir. 1999). In the AECA

6  context, a willful violation occurs where a defendant knows his or her conduct violates the law.

7  United States v. Hsu, 364 F.3d 192, 197 (4th Cir. 2004) (AECA requires specific intent). At issue here

8  is Category XII of the Munitions List, set forth in the AECA's implementing regulations at 22 C.F.R.

9  § 121.1. This category includes, inter alia, "astro-compasses and star trackers and military

10  accelerometers and gyros . . . ." 22 C.F.R. § 121.1.

11        Defendant argues that the court should dismiss the indictment because the AECA and its

12  implementing regulations are unconstitutionally vague as applied to her. Specifically, Defendant

13  argues that a person of ordinary intelligence could not determine that the Endevco accelerometer

14  device is a "military accelerometer" requiring an export license. In support of this argument, she

15  attaches to her motion two pages of manufacturer-provided "public information" regarding the

16  Endevco accelerometer. She argues that "[a] person of ordinary intelligence would likely deem that

17  data sheet incomprehensible," and that the sheet does not indicate whether the device is for military

18  or weapons use. (Mot. at 3.) She also emphasizes the allegation that even prosecutors must request

19  information from the State Department to determine if an item is on the list.

20        **1.      Legal Standards**

21        "Unless the law is impermissibly vague in all applications," a defendant challenging a law on

22  vagueness grounds can argue only that the law is vague as applied to that defendant. Lee, 183 F.3d

23  at 1031 (citing United States v. Iverson, 162 F.3d 1015, 1021 (9th Cir. 1998)); see also United States

24  v. Kim, 449 F.3d 933, 942 (9th Cir. 2006) ("vagueness challenges to statutes that do not involve First

25  Amendment violations must be examined as applied to the defendant") (citations omitted). A criminal

26  statute is unconstitutionally vague, in violation of due process, "if a reasonable person of ordinary

27  intelligence would [not] understand what conduct the statute prohibits." Lee, 183 F.3d at 1032 (citing

28  Iverson, 162 F.3d at 1021). Furthermore, a regulation is unconstitutionally vague if it is not "capable

1  of a limited interpretation such that '(1) ordinary people could understand what conduct is prohibited,

2  and (2) those enforcing the law are provided with clear standards to constrain them.'" Lee, 183 F.3d

3  at 1032 (citing United States v. Erickson, 75 F.3d 470, 475 (9th Cir. 1996)).  Courts apply a less-strict

4  vagueness test to a criminal statute regulating economic activity.  United States v. Sun, 278 F.3d 302,

5  309 (4th Cir. 2002).  Additionally, the inclusion of a mens rea requirement in a statute "significantly

6  reduces any concern that the statute and regulation fail to provide proper notice."  Lee, 183 F.3d at

7  1033; see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)

8  ("scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of

9  notice to the complainant that his conduct is proscribed").

10         **2.       Analysis**

11         Defendant attempts to distinguish numerous cases in which circuit courts have rejected as-

12  applied vagueness challenges to the AECA.  See, e.g., Lee, 183 F.3d 1029; United States v. Helmy,

13  951 F.2d 988 (9th Cir. 1992); Hsu, 364 F.3d 192; Sun, 278 F.3d 302; United States v. Swarovski, 592

14  F.2d 131 (2d Cir. 1979).  She claims that these cases differ from hers because the defendants

15  possessed specialized knowledge regarding the products they sought to export, whereas in her case

16  the government cannot present evidence that she knew the device was a prohibited article.  The court

17  notes that not only does Defendant fail to cite a single case in which the court found the AECA

18  unconstitutionally vague, her argument emphasizes the premature and misdirected nature of her

19  challenge.  Because the charging statute contains a scienter requirement (willful violation), innocent,

20  accidental, or unknowing exportation of a proscribed device cannot support a conviction.  Therefore,

21  the relevant inquiry consists not of an abstract analysis of constitutional vagueness, but what

22  Defendant knew.  Such an inquiry will be undertaken by a jury and based on the evidence adduced

23  at trial.  See Lee, 183 F.3d at 1032-33.  Here, the factual record has yet to be developed.  Until an

24  evidentiary record is created, the court cannot determine whether Defendant "in fact had fair notice

25  that the statute and regulations proscribed [her] conduct."  Hsu, 364 F.3d at 196.  Application of these

26  cited controlling authorities, in essence, renders Defendant's constitutional challenge moot at this

27

28

1  juncture.[1]

2       The court therefore **DENIES** Defendant's motion to dismiss the indictment for vagueness.

3       **B.     Motions to Suppress**

4       Defendant argues that the evidence seized pursuant to customs subpoenas should be suppressed

5  because the subpoenas were unauthorized and unlawful.  The evidence at issue consists of Internet

6  Protocol ("IP") log-in histories and addresses subpoenaed by Immigration and Customs Enforcement

7  ("ICE") agents regarding the MSN/Hotmail account used by Defendant and an alleged co-conspirator

8  to communicate with the undercover agent.  According to the government, MSN/Hotmail provided

9  subscriber information and log-in histories – including the date and time of and IP address used for

10  each log-in – for the chinaman326 account.  The government argues that the customs subpoenas were

11  valid and, even if the subpoenas were invalid, suppression is unavailable as a remedy.

12       Defendant also argues that other evidence derived from the administrative subpoenas –

13  including evidence collected through the use of a pen register/trap and trace, search warrant, or order

14  for electronic interception – should be suppressed as fruit of the poisonous tree.

15       **1.     The Subpoenas Were Authorized**

16       Defendant claims that the subpoenas were unauthorized by the Stored Communications Act

17  ("SCA"), 18 U.S.C. §§ 2702-2712.  She points to § 2703(c), which provides that "[a] provider of

18  electronic communication service or remote computing service shall disclose to a governmental

19  entity" information regarding a service subscriber or customer, including the individual's subscriber

20  number or identity, "when the governmental entity uses an administrative subpoena authorized by a

21  Federal or State statute . . . ."  18 U.S.C. § 2703(c)(2).  Defendant then analyzes a series of statutes

22  and regulations in arguing that federal law does not authorize ICE or the Department of Homeland

23  Security to issue this type of administrative subpoena in a criminal case.  (Mot. at 5.)  The government

24

25       [1]In contrast, the as-applied vagueness analysis is more appropriately undertaken in cases like
26  Helmy, 951 F.2d 988, in which the court addressed a vagueness challenge to a sentencing provision that established a base offense level of 22 for crimes involving "sophisticated weaponry." Id. at 990
27  (citing U.S. Sentencing Guidelines § 25M.2).  The court rejected the argument that "sophisticated weaponry" was unconstitutionally vague as applied to MX-4926, the missile component illegally exported by the defendant.  The court found that "missiles fall within any common sense definition
28  of 'sophisticate weaponry'" and that the United States Munitions List adequately specified MX-4926 as a restricted substance.  Helmy, 951 F.2d at 992-94.

1   relies on many of the same statutory provisions in arguing that statutory authority does exist.

2          Both parties cite 22 U.S.C. § 2778(e), pursuant to which the President may delegate to another

3   department the authority to enforce the AECA and investigate violations thereof.  Both parties also

4   note that the President delegated this authority to the Department of State in Executive Order 11958.

5   Exec. Ord. No. 11958, Jan. 18, 1977, 42 F.R. 4311, <u>included as amended in note following</u> 22 U.S.C.

6   § 2751.  The Department of State in turn authorized ICE to "take appropriate action to ensure

7   observance of this subchapter as to the export or attempted export of any defense article or technical

8   data . . . ." 22 C.F.R. 127.4.  Defendant's analysis stops here, concluding that these provisions do not

9   authorize ICE to issue the administrative subpoenas.

10          In contrast, the government finds authority for administrative subpoenas within the AECA's

11  framework.  The government argues that the President's authority under the AECA includes the power

12  to enforce the Act by making investigations and "by subpena [sic] requir[ing] any person to appear

13  and testify or to appear and produce books, records, and other writings, or both . . . ." 50 U.S.C. Appx.

14  § 2241(a)(1), <u>incorporated in</u> 22 U.S.C. § 2278(e) ("the President is authorized to exercise the same

15  powers concerning violations and enforcement which are conferred upon departments, agencies and

16  officials . . . by [50 U.S.C. Appx. § 2411(a)]").  Thus, according to the government, this subpoena

17  authority has been delegated to the Department of State and to ICE.  The government also cites, as

18  further sources of ICE's authority to execute administrative subpoenas, 22 C.F.R. § 127.4 (ICE

19  officers "may take appropriate action to ensure observance of [the International Traffic in Arms

20  Regulations] as to the export or the attempted export of any defense article or technical data . . .") and

21  19 U.S.C. § 1589a (customs officer may "execute and serve any order, warrant, subpoena, summons,

22  or other process issued under the authority of the United States").

23          Having carefully considered the authorities presented by both parties, the court agrees with

24  the government and finds that the administrative subpoenas issued by ICE and used to obtain IP log-in

25  histories and addresses were authorized by the SCA, AECA, and federal regulations thereunder.

26                 **2.     The Stored Communications Act Provides No Suppression Remedy**

27          The government further argues that, regardless of the validity of the subpoenas, the SCA

28  provides no suppression remedy.

1          In <u>United States v. Smith</u>, 155 F.3d 1051 (9th Cir. 1998), the Ninth Circuit concluded that, in

2    light of the express remedies provided for by the SCA, <u>see</u> 18 U.S.C. §§ 2701 (criminal penalties),

3    2707 (civil damages), and the SCA's exclusivity of remedies provision, <u>see id.</u> § 2708, the SCA

4    "expressly rules out exclusion as a remedy."  <u>Smith</u>, 155 F.3d at 1056 ("If the voicemail message at

5    issue is subject to the strictures of the Stored Communications Act, then suppression is not an

6    available remedy."); <u>see also</u> <u>United States v. Ferguson</u>, 508 F. Supp. 2d 7, 10 (D.D.C. 2007) ("Even

7    if Defendant was correct that the Government did not comply with the SCA, the statute does not

8    provide for a suppression remedy.") (citations omitted); <u>Bansal v. Russ</u>, 513 F. Supp. 2d 264, 282

9    (E.D. Pa. 2007) (purpose of § 2708 is "to establish that the exclusionary rule is not a remedy provided

10   for by the [SCA]").  Defendant seeks to distinguish <u>Smith</u> and <u>Ferguson</u> on the grounds that <u>Smith</u>

11   concerned suppression pursuant to the Wiretap Act, and <u>Ferguson</u> involved a magistrate-issued

12   warrant and somehow failed to distinguish <u>Smith</u> properly.  (See Reply at 4-5.)  The court finds these

13   alleged distinctions unpersuasive and, based on the authorities discussed above, agrees with the

14   government's contention that suppression is not available.

15             **3.**      **Defendant Had No Reasonable Expectation of Privacy**

16        The government also argues that Defendant had no reasonable expectation of privacy in her

17   IP log-in histories and IP addressing information.

18        "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally

19   protected reasonable expectation of privacy.'"  <u>California v. Ciraolo</u>, 476 U.S. 207, 211 (1986)

20   (quoting <u>Katz v. United States</u>, 389 U.S. 347, 360 (1967) (Harland, J., concurring)).  No privacy

21   interest exists in "information revealed to a third party and conveyed by him to Government

22   authorities, even if the information is revealed on the assumption that it will be used only for a limited

23   purpose and the confidence placed in the third party will not be betrayed."  <u>United States v. Miller</u>,

24   425 U.S. 435, 443 (1976) (citations omitted).

25        In <u>United States v. Forrester</u>, 512 F.3d 500 (9th Cir. 2008), the court addressed the defendant's

26   argument that evidence obtained through computer surveillance – specifically, e-mail to/from

27   addresses, IP addresses of websites he visited, and the total amount of information transmitted to or

28   from his account – should have been excluded as a violation of his Fourth Amendment right to be free

07cr2915

1  from unlawful searches and seizures.  The court held that the method of surveillance did not violate

2  the defendant's Fourth Amendment right because the defendant had no legitimate expectation of

3  privacy:

4        We conclude that the surveillance techniques the government employed here are
         constitutionally indistinguishable from the use of a pen register that the Court
5        approved in [Smith v. Maryland, 442 U.S. 735 (1979)].  First, e-mail and Internet
         users, like the telephone users in Smith, rely on third-party equipment in order to
6        engage in communication. . . . Analogously, e-mail and Internet users have no
         expectation of privacy in the to/from addresses of their messages or the IP addresses
7        of the websites they visit because they should know that this information is provided
         to and used by Internet service providers for the specific purpose of directing the
8        routing of information.  Like telephone numbers, which provide instructions to the
         "switching equipment that processed those numbers," e-mail to/from addresses and IP
9        addresses are not merely passively conveyed through third party equipment, but rather
         are voluntarily turned over in order to direct the third party's servers.

10  Forrester, 512 F.3d at 510 (quoting Smith v. Maryland, 442 U.S. at 744).

11       Defendant claims that Forrester's reasoning and holding do not apply here because Forrester

12  addressed not the SCA but an alleged violation of the then-applicable pen register statute, 18 U.S.C.

13  § 3121-27.  Defendant argues that, by enacting the SCA, Congress intentionally created a protected

14  privacy interest in electronic communications and IP addresses.  In support of this claim, she cites

15  Theofel v. Farey-Jones, 359 F.3d 1066 (9th Cir. 2004), in which the court stated, "The [SCA] protects

16  individuals' privacy and proprietary interests.  The Act reflects Congress's judgment that users have

17  a legitimate interest in the confidentiality of communications in electronic storage at a

18  communications facility."  Id. at 1072-73.  Defendant argues that this fact distinguishes conduct

19  governed by the SCA from conduct governed by a pen register statute.[2]

20       The SCA does not support the distinction Defendant wishes to draw.  As noted above, §

21  2703(c)(2) specifically states that, when a governmental entity presents an authorized administrative

22  subpoena, an electronic communication service provider must disclose information including, most

23  pertinently, "records of session times and durations," § 2703(c)(2)(C), and "subscriber number or

24  identity, including any temporarily assigned network address," § 2703(c)(2)(E), of a subscriber or

25

26  _____

27       [2]Defendant also claims that this case differs from the pen register cases due to a historical
    difference between telephones and the internet.  She contends that the lack of an expectation of
    privacy in phone calls can be traced to the early days of telephone technology, when a live operator
28  connected the caller to the recipient, whereas modern internet use has never involved a human
    intermediary.  Forrester expressly precludes this argument.

1  customer. Thus, even if the SCA does create a privacy interest in some aspects of electronic

2  communications, it clearly does not communicate to subscribers or customers that they have a

3  reasonable expectation of privacy in their IP addresses and log-in histories. This interpretation is

4  consistent with the holding in Forrester and reflects the important distinction between the privacy

5  concerns implicated by disclosure of the contents of electronic communications and those implicated

6  by disclosure of address and access data related to internet use. See Forrester, 512 F.3d at 509-11.

7  Accordingly, the court concludes that Defendant had no reasonable expectation of privacy in her IP

8  log-in histories and IP addressing information.[3]

9         **4.      Defendant Lacks Standing to Assert a Fourth Amendment Violation**

10        Finally, the government claims that Defendant lacks standing to assert a Fourth Amendment

11  violation because the government obtained the subpoenaed information from a third party.

12        Where a defendant's Fourth Amendment interests are not implicated, courts apply "the general

13  rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate

14  the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is

15  issued." Miller, 425 U.S. at 444 (citations omitted). In other words, if a defendant lacks a reasonable

16  expectation of privacy in regard to evidence obtained from a third party, the defendant does not have

17  standing to invoke the exclusionary rule. See United States v. Payner, 447 U.S. 727, 731-32 (1980)

18  ("[A] court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful

19  search or seizure violated the defendant's own constitutional rights.") (citation omitted).

20        In light of the court's conclusion that Defendant lacks a reasonable expectation of privacy in

21  the evidence seized pursuant to the administrative subpoenas in this case, the court also finds that

22  Defendant does not have standing to seek suppression of the evidence.

23

24        [3]Contrary to Defendant's suggestion, even if Defendant's Fourth Amendment rights had been
violated, suppression does not automatically follow. The Supreme Court has cautioned against an

25  expansive application of the exclusionary rule, explaining: "[w]hether the exclusionary sanction is
appropriately imposed in a particular case, . . . is an issue separate from the question whether the

26  Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct. .
. . [W]e have never held that evidence is fruit of the poisonous tree simply because it would not have

27  come to light but for the illegal actions of the police." Hudson v. Michigan, 547 U.S. 586, 591 (2006)
(internal quotations omitted). In holding that a violation of the "knock-and-announce" rule does not

28  require suppression of evidence found in a subsequent search, the Hudson Court noted that civil
liability acted as an effective deterrent to "knock-and-announce" violations. See id. at 598.

1    The court therefore **DENIES** Defendant's motion to suppress the IP log-in histories and

2  addresses obtained pursuant to administrative subpoenas.  Accordingly, the court also **DENIES**

3  Defendant's motion to suppress all allegedly derivative evidence, including evidence collected

4  through the use of a pen register/trap and trace, search warrant, or order for electronic interception.

5  **III.    CONCLUSION**

6    For the foregoing reasons, the court hereby **DENIES** Defendant's motion to dismiss the

7  indictment for vagueness and motions to suppress.

8    **IT IS SO ORDERED.**

9  DATED:  March 20, 2008

10  _____

11  Hon. Jeffrey T. Miller
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28